**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:

CAROLYN G. BROWN,

                                **Debtor.**

Chapter 7
Case No. 18-11720 (MEW)

------------------------------------------------------------------x
CAROLYN G. BROWN,

                              **Plaintiff,**

     – v –

MILTON DAVIS, ROBERT SHAPIRO, JERI
SHAPIRO, DANE R. ROSEMAN, A/K/A "DAYNE
ROSEMAN," IVAN ACAVEDO, WOODBRIDGE
MORTGAGE INVESTMENT FUND 1 LLC, THE
ALLEGED LENDER, HOWARD L. SHERMAN,
and RICHARD SALVATO

                              **Defendants.**

Adv. Pro. No. 19-01100 (MEW)

------------------------------------------------------------------x

## DECISION CONCERNING DEBTOR'S PLACE OF RESIDENCE

The debtor, Carolyn G. Brown, originally brought this action against Milton Davis as successor-in-interest to her lender, Woodbridge Mortgage Investment Fund I, LLC ("**Woodbridge**"). Woodbridge extended a loan (the "**Loan**") to an entity controlled by Brown; the Loan was guaranteed by Brown, and the guarantee and the Loan were secured by a pledge of Brown's ownership interests in the borrower and by a mortgage on a one-bedroom apartment located at 100 West 94th Street in New York, NY (the "**94th Street Property**"). The gist of Brown's allegations is that Woodbridge violated the Home Ownership and Equity Protection Act (otherwise known as "**HOEPA**") and the Truth in Lending Act (otherwise known as "**TILA**"), and she seeks a declaration that the Loan and security interests are invalid. Brown also opposed a motion by Davis seeking relief from the automatic stay to enforce his security interests.

1

The parties agreed that Brown's HOEPA and TILA claims depended at least in part (if not entirely) on allegations that the 94th Street Property constituted her principal personal residence at the time of the Loan.  The Court scheduled a hearing to consider a motion to dismiss on this ground.  In the interim, Brown filed an amended complaint that asserted additional claims under the Racketeer Influenced and Corrupt Organizations Act, the Hobbs Act, the Travel Act and other theories, and that named the additional defendants listed in the above caption (none of whom have been served with process).  It appeared that issues relating to Brown's residence at the time of the Loan still were key to most (if not all) of her asserted claims.  Accordingly, as a case management matter this Court scheduled an evidentiary hearing to determine, as a factual matter, whether Brown resided at the 94th Street Property at the time of the Loan.  That evidentiary hearing took place on July 24, 2019.

Based on the evidence set forth at trial and for the reasons stated below, I find that the 94th Street Property was not Brown's principal personal residence at the time of the Loan.  Instead, Brown resided at another property located at 609 Columbus Ave. (the "**Columbus Ave. Property**") while the 94th Street Property was used as a rental property that was occupied by Brown's sister.  The documentary evidence on this issue was convincing and far outweighed Brown's testimony to the contrary.

### The Documentary Evidence

Brown purchased the 94th Street Property in or around 2009.  The 94th Street Property is a one-bedroom property.

In 2012, Brown wished to obtain a loan to supplement her income and to pay off existing mortgage loans on properties she owned.  She testified that she was told by a broker that Woodbridge was a possible lender but that Brown could not list the 94th Street Property as her

personal residence in order to obtain a loan from Woodbridge. She was also told that she would need to form a limited liability company and to transfer ownership of the 94th Street Property to that entity in order to obtain the loan. Brown formed an entity called SMM Investor, LLC ("**SMM Investor**"); Brown testified that she formed SMM Investor with her sister, Shirley Clark, and that the initials "SMM" stood for "Sisters Making Money."

In October 2012, SMM Investor entered into the Loan with Woodbridge. The original Loan was evidenced by a one-year note in the principal amount of $270,000. *See* Defendant's Ex. P (the "**2012 Note**"). Brown signed the 2012 Note on behalf of SMM Investor as its sole member and operating manager. *See* Defendant's Ex. K. The term of the 2012 Note was one year, with partial interest payments due each month and a balloon payment due after one year. *See* Defendant's Ex. P.

In connection with the 2012 Note, Brown also executed a personal guarantee. She signed a security agreement in her own name on the same day that she signed the loan papers on behalf of SMM Investor. *See* Defendant's Ex. A. The security agreement stated that Brown resided at the Columbus Ave. Property. Brown also executed a collateral assignment of lease that stated that her sister Shirley Clark had leased the 94th Street Property from Brown pursuant to a lease agreement commencing June 1, 2011. *See* Defendant's Ex. B. The assignment transferred Brown's interest in the lease agreement to Woodbridge as security for the Loan.

Two unexecuted lease agreements between Clark and Brown (covering the periods June 1, 2011 through May 30, 2015 and September 1, 2015 through August 31, 2017) were introduced into evidence. See Defendant's Ex. M and Ex. O. Clark was identified as the tenant and Brown as the landlord. In the lease covering the earlier period, Clark was described as "[t]he *only* person(s) living in the [94th Street Property]." *See* Defendant's Ex. M at 1 (emphasis added).

Brown's tax returns for 2012 and 2013 show that the 94th Street Property was treated as a rental property rather than as her personal residence. *See* Defendant's Ex. C & D. Brown confirmed at trial that she had authorized the filing of these tax returns by her accountant. In each of these tax returns, Brown identified her home address as the Columbus Ave. Property. Each tax return listed the 94th Street Property as a rental property, the income and expenses for which were listed on Schedule E. Schedule E requires a taxpayer to identify, for each property that generates rental income, the number of days that the property was rented at a fair market rate ("**Fair Rental Days**") and the number of days the property was used for personal purposes ("**Personal Use Days**"). Those figures are then used to allocate expenses and to determine the extent to which such expenses are deductible.

Under the IRS instructions for Schedule E, "Personal Use Days" reflect any day that a taxpayer uses the property "for personal purposes." *See* INTERNAL REVENUE SERVICE, 2012 INSTRUCTIONS FOR SCHEDULE E (FORM 1040), SUPPLEMENTAL INCOME AND LOSS, at 5, https://www.irs.gov/pub/irs-prior/i1040se--2012.pdf; INTERNAL REVENUE SERVICE, 2013 INSTRUCTIONS FOR SCHEDULE E (FORM 1040), SUPPLEMENTAL INCOME AND LOSS, at 5 https://www.irs.gov/pub/irs-prior/i1040se--2013.pdf.[1] If the 94th Street Property had been Brown's personal residence, then each day of her own residence would have been a "Personal Use Day," regardless of whether anyone else also resided at the property. However, the tax returns for 2012 and 2013 listed the number of "Personal Use Days" as zero.

---

[1] The instructions were not offered in evidence but I may take judicial notice of them. *See Anderson v. Greene*, No. 14 CIV. 10249 (KPF), 2016 WL 4367960, at *19 n. 13 (S.D.N.Y. Aug. 10, 2016), *aff'd*, No. 18-1773-CV, 2019 WL 2261459 (2d Cir. May 28, 2019) (taking judicial notice of IRS 2011 tax calendar); *Kaff v. Nationwide Credit, Inc.*, No. 13CV5413SLTVVP, 2015 WL 12660327, at *3 n. 2 (E.D.N.Y. Mar. 31, 2015) (taking judicial notice of IRS tax form); *In re Draiman*, 450 B.R. 777, 802 n. 16 (Bankr. N.D. Ill. 2011) (taking judicial notice of IRS instructions for tax form).

Upon the expiration of the 2012 Note, on October 9, 2013, Brown executed an amended and restated note that extended the term of the Loan by one year (to October 8, 2014). *See* Defendant's Ex. Q (the "**2013 Note**"). The terms of the 2013 Note were substantially the same as those of the 2012 Note. This time, the "chief executive office" of SMM Investor, LLC was identified to be the Columbus Ave. Property and the "principal place of business" was identified as the 94th Street Property.

Brown's tax return for the year 2014 continued to reflect the 94th Street Property as a rental property and again listed the number of Personal Use Days as zero. The 2014 tax return also continued to identify Brown's home address as the Columbus Ave. Property. *See id.* at 1. Brown did not dispute at trial that that she had authorized the filing of this 2014 tax return.

In April 2015, Brown filed a chapter 13 bankruptcy petition in this Court. In her petition, Brown listed the 94th Street Property as real property in which she held a fee simple interest. Sch. A, Voluntary Petition, Case No. 15-10900 (hereinafter, the "Chapter 13 Docket") [Dkt. No 1], at 4. However, she listed the Columbus Ave. Property as her home address. *See* Voluntary Petition, Chapter 13 Docket [Dkt. No. 1], at 1. Brown also filed a proposed chapter 13 plan, in which the Loan was classified as "Category 4" claim, meaning one which was "Secured by . . . Real Property Not Used as Debtor's Principal Place of Residence." *See* Chapter 13 Plan , Chapter 13 Docket [Dkt. No. 10] at 5. The Loan was not placed into "Category 2," which was for "Claims Secured By a Mortgage on the Debtor's Real Property Used as a Principal Residence." *Id.* at 3.

Davis had by then acquired the Loan from Woodbridge, and he objected to certain aspects of Brown's proposed chapter 13 plan. Curiously, Davis initially contended that the 94th Street Property was Brown's actual residence and that the Loan therefore had been mis-classified

5

under Brown's plan. *See* Objection of Milton Davis to Confirmation of Debtor's Chapter 13 Plan, Chapter 13 Docket [Dkt No. 13], at 2; Motion of Milton Davis to Dismiss Chapter 13 Case, Chapter 13 Docket [Dkt No. 14], at 4.[2] Brown took the position, however, that the 94th Street Property was not her residence, and she filed a modified plan that continued to classify Davis's claim as one that was secured by real property "Not Used as Debtor's Principal Place of Residence." *See* Amended Chapter 13 Plan, Chapter 13 Docket [Dkt. No. 20] at 5. Davis filed a further objection in which he no longer asserted that the 94th Street Property was Brown's actual "residence," but in which he contested Brown's ability to repay the debt owed to him. *See* Statement of Milton Davis, Chapter 13 Docket [Dkt. No. 23. Brown's counsel then filed a statement that asserted that Brown's sister occupied the 94th Street Property and had agreed to pay rent that would be sufficient to cover amounts owed to Davis, and that "[t]he sole reason for [the] Bankruptcy filing was to pay off the $303,300 owed to [Davis] so that Ms. Clark can continue to stay in the [94th Street Property]." *See* Statement of Carolyn Brown in Further Opposition of Motion of Milton Davis to Dismiss Chapter 13 Case or Vacate the Automatic Stay, Chapter 13 Docket [Dkt. No. 30] ¶ 1 (put in evidence as Exhibit J).

The chapter 13 case was ultimately dismissed due to Brown's inability to make plan payments, and there were no rulings on the residence issues during the chapter 13 case.

Brown's 2015 and 2016 tax returns again claimed, as in prior years, that the 94th Street Property was used exclusively as a rental investment property and that the number of "Personal Use Days" during 2015 was zero. They also listed Brown's residence as the Columbus Ave. Property. *See* Defendant's Ex. E & Ex. F.

---

[2] Some of Brown's papers (and the docket sheet) were offered in evidence, but Davis's filings were not. However, the parties agreed during the hearing that the Court could take judicial notice of the chapter 13 filings and the positions that the parties' attorneys took in them.

6

In 2018, Davis initiated proceedings under the UCC to foreclose on Brown's ownership interests in SMM Investors. This chapter 7 case was filed to stop that foreclosure. The chapter 7 petition asserts that the 94th Street Property is Brown's residence. *See* Voluntary Petition [Dkt No. 1], at 2. It is the only document that was introduced in evidence that purported to show that Brown has ever occupied the 94th Street Property.

### Brown's Testimony

At the hearing, Brown asserted that the written representations described above—all of which bear her name and her authorization—were incorrect. Brown claimed, despite all of the assertions she had previously made, that she in fact resided at the 94th Street Property from the time when she purchased it in or around 2009 up until present day, except for a brief half-year period at the beginning of 2015 during which she stayed with her husband at the Columbus Ave. Property while he was ill. Brown contended that her temporary residence with her husband during 2015 was the reason why she listed the Columbus Ave. Property as her residence in her chapter 13 petition. Brown further testified that her sister also resides at the 94th Street Property but that Brown sleeps in the bedroom while Clark sleeps in the living room. No corroborating evidence was provided regarding this alleged arrangement, and Clark was not called to testify.

As noted above, Brown testified that a broker told her she could not obtain the Loan from Woodbridge if she listed the 94th Street Property as her personal residence. Brown admitted, however, that the broker did not instruct her to represent in the Loan documents that she lived at the Columbus Ave. Property and that he never coerced her into signing the Loan documents. Brown sought to discredit the information she provided in her tax returns by claiming that she relied upon her accountant, that she did not have knowledge of relevant tax and accounting laws, and that she was not aware of the implications of the statements in the tax returns. However, she

7

also testified that she signed the tax returns each of the relevant years and that she was aware that in these returns her address was listed as the Columbus Ave. Property.

More particularly, Brown testified that she did not know the distinction between "Personal Use Days" and "Fair Rental Days" or the requirements of Schedule E, though she was aware of the fact that her tax returns treated the 94th Street Property as a rental property and that she benefited from expense deductions that were available based on that characterization. When the Court inquired about the accuracy of the reported tax information Brown suggested that she would speak to her accountant about the possibility of filing amended tax returns.

Brown further asserted that her husband resides at the Columbus Ave. Property and that she used that address on the tax returns because she and her husband filed joint tax returns despite the fact that they are separated. When she was shown the representations that were made by Brown's attorney during the chapter 13 case, Brown denied that she had authorized such statements and denied the accuracy of the statements that Ms. Clark (not Brown) was the occupant of the 94th Street Property.

### **Findings of Fact**

I have considered all of the evidence, including Brown's testimony, and I have made assessments of the credibility of her testimony. The record shows that Brown knowingly and consistently represented (in Loan documents, IRS filings and filings in this Court), over the course of many years, that the 94th Street Property was not her personal residence and that instead it was a rental property that was occupied exclusively by Brown's sister. I find that documentary evidence to be compelling. I also find that Brown's attempts to explain away the documentary evidence are not credible. Brown asks me to find that her prior statements about her residence were knowingly false, and to accept instead her current testimony about her 2012

residence despite the absence of any corroborating evidence. The evidence as a whole does not reasonably support a finding in Brown's favor on this issue. I find that Brown invested in three separate real properties, that she was reasonably well-versed in real estate investments and their potential tax consequences, and that she was fully aware of the meaning and significance of her prior representations in the Loan documents, the representations in her tax returns regarding the manner in which the 94th Street Property was used, and the statements made during the course of her chapter 13 case. Her attempts to discredit those prior representations are not credible.

Accordingly, I find that Brown did not reside at the 94th Street Property at the time of the Loan. The 94th Street Property was used (and was intended to be used) as a rental property, not as Brown's personal residence.

## **Further Proceedings**

Counsel to Davis and to Brown shall each submit statements, of no more than five pages each, informing the Court of their contentions as to whether the findings set forth herein dispense of the claims that Brown has asserted. If either party contends that additional issues must also be addressed, they should identify what those issues are. The statements should be submitted on or before August 30, 2019, and the Court will hold a status conference on September 10, 2019 at 10:00 a.m. to discuss how to proceed. Davis's pending motion for relief from the automatic stay also will be addressed at the September 10, 2019 conference.

Dated: New York, New York
      August 16, 2019

/s/ Michael E. Wiles
Hon. Michael E. Wiles
United States Bankruptcy Judge